IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

BRUCE M. HUFFMAN, )
)
         Plaintiff, )
)
vs. ) Case No. 14-0619-CV-W-ODS
)
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security, )
)
         Defendant. )

ORDER AND OPINION AFFIRMING IN PART AND REVERSING IN PART
COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying his application for disability benefits. The Commissioner's decision is affirmed in part and reversed in part. The case is remanded for further proceedings.

I.  STANDARD OF REVIEW

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Gragg v. Astrue, 615 F.3d 932, 938 (8th Cir. 2010).

## II. BACKGROUND

Plaintiff was born in October 1972, graduated from high school, and has prior work experience as a houseparent, construction worker, injection molding machine tender, warehouse worker, stock clerk, and meat cutter. He last worked on April 15, 2010, which is also the date he alleges he became disabled. However, his last job was as a caretaker in a residential care facility, R. at 115, and he testified he stopped working at that job because he lost his car, not because of any physical or mental limitations. R. at 533.

Plaintiff's application alleges he is disabled due to a combination of obesity, degenerative disc disease, affective disorder, and anxiety. The ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform "a reduced range of sedentary work;" specifically, that Plaintiff could lift and carry ten pounds, stand and walk for two hours a day, sit for a total of eight hours a day, occasionally perform "postural activities" but never climb, crawl, or squat, and required the use of a cane for ambulation. The RFC also limits Plaintiff "to simple tasks with simple work related decisions that are object oriented." R. at 15. Based on testimony from a vocational expert, the ALJ concluded Plaintiff could not return to his past work but he could perform work as a final assembler or document preparer.

## III. DISCUSSION

### A.

Plaintiff contends the RFC finding lacks sufficient support. The Court agrees, but only in part.

As noted, Plaintiff last worked in April 2010, but even before then he experienced problems with his back and weight. In July 2010 he sought treatment for chronic back pain, and it was noted that a 2009 MRI revealed a bulging disc at L5-S1 with minimal compression and another bulging disc at L4-L5 with narrowing in the spinal column. However, he had "no significant lower extremity symptoms," straight leg raising test was

2

negative, and he exhibited no deficits in motor strength in either his upper or lower extremities. It was believed his back pain was due to muscular problems and not spinal issues so he was directed to engage in physical therapy. He was also directed to diet, exercise, and lose weight, as he weighed over 400 pounds. R. at 214-16. In September 2010 it was recommended that he receive epidural steroid injections; if that failed to provide relief, the possibility of a medial branch block was to be explored. Narcotic pain medication was not considered because of Plaintiff's history of alcoholism. Plaintiff's obesity was also discussed, and Plaintiff was told "that his morbid obesity is one of the contributors to his back pain and without lifestyle changes and weight loss, we would likely not be able to completely eradicate his pain." R. at 220-21.

Plaintiff sought and received little further treatment for his back until May 2012. In the interim, Plaintiff also did not control his weight. An x-ray taken at that time was "unremarkable." R. at 321; see also R. at 322. In June 2012 Plaintiff exhibited a full range of motion in his back and was able to ambulate without limping or exhibiting any other deficit. R. at 317. He was prescribed Motrin. R. at 318. In August Plaintiff still had not lost weight, and his doctor referred him for a weight management consultation. R. at 411. In September, Plaintiff's doctor noted Plaintiff suffered from "chronic pain from obesity" and that he was awaiting an evaluation from the weight-loss consultation. Nonetheless, Plaintiff exhibited an intact range of motion without deficit, and the doctor prescribed Neurontin. R. at 413. The following month Plaintiff reported that the Neurontin helped alleviate the pain; the dosage was increased. R. at 415-17. Plaintiff returned later that month with complaints related to a bone spur in his foot, but he reported that the increased dosage of Neurontin provided still further relief. R. at 418. It was also reported that the attempted referral for a weight loss consultation had not occurred because the place to which Plaintiff was referred was "out of network." R. at 420. In late November 2012, Plaintiff reported that he had gone shopping on the recent Black Friday and now experienced pain in his joints and back and the doctor noted "somatic dysfunctions" in the cervical, thoracic, and lumbar spine with tenderness on the shoulders and knees, and he was prescribed Prednisone. At this time, he weighed over 420 pounds. R. at 424-26.

3

Plaintiff underwent another MRI in January 2013. The MRI revealed (1) a seven to eight millimeter disc protrusion at L5-S1 with mild to moderate stenosis and compression on the S1 nerve roots, (2) disc bulge at L4-L5 with a ten millimeter disc protrusion and compression on the L5 nerve roots, and (3) mild disc bulge at L3-L4. There is no indication of any additional or different treatment prescribed as a result of this MRI – but then, the hearing was held in February 2013 and the ALJ's decision was issued later that month, so there may not have been time.

The ALJ noted Plaintiff suffers from degenerative disc disease and "received minimal treatment for this condition that has also essentially been routine and or conservative in nature." R. at 15. The ALJ also reviewed the medical records indicating mild symptoms and noted the gap in treatment from 2010 to 2012 and the fact that doctors consistently recommended Plaintiff lose weight (which he never did) and that none suggested surgery on his back. R. at 15-16. The ALJ also discussed the January 2013 MRI, but indicated it was not as probative as its content suggests because it did "not appear that any further treatment recommendations were made at this time." R. at 16.

To be entitled to disability, Plaintiff has to have suffered a disabling condition or combination of conditions that have or are expected to last more than one year. The condition(s) must exist on or after the alleged onset date and before the date of the ALJ's decision, which means Plaintiff must demonstrate he became disabled sometime between April 15, 2010 and February 28, 2013. The ALJ formulated an RFC that led the VE to testify Plaintiff could perform work in the national economy. The Court agrees that substantial evidence in the Record as a whole – including medical evidence – supports the RFC formulation for the vast majority of this time period. The evidence from 2010, particularly including reports from Plaintiff's doctors and the objective diagnostic testing, suggested benign problems that could be alleviated with weight reduction. Even without weight reduction no significant limitations were noted, and any limitations that could have been alleviated by following his doctor's orders cannot form the basis for a disability claim. Plaintiff sought and received no further treatment until the middle of 2012; at that time, Plaintiff continued to exhibit few limitations, and his doctor continued to indicate Plaintiff's problems could be alleviated with weight loss.

4

Plaintiff was treated conservatively, and reported the conservative treatment was helpful. This medical evidence, combined with the non-medical evidence set forth by the ALJ (and that is not challenged in this proceeding), supports the RFC's validity from the alleged onset date, during the multi-year gap in treatment, and through November 2012.[1]

The January 2013 MRI changes the picture. This MRI describes a condition that may be more serious than the previous MRI, and that may be more serious than his doctors described previously. It is entirely possible that Plaintiff's condition got progressively worse, particularly given his failure to lose weight as directed. It may be that by January 2013 his condition had deteriorated to the point that he is more limited than described in the RFC, and that following the doctor's instructions will no longer improve his condition. It could be that the MRI is rather benign. It could also be that the MRI reflects more serious limitations than described in the RFC, but those limitations are still subject to amelioration. The problem is that the Record does not purport to provide any answers, and the ALJ's explanation for dismissing the January 2013 MRI is unpersuasive. The ALJ found that "[i]t d[id] not appear that any further treatment recommendations were made at this time," R. at 16, but as noted earlier there may not have been time for any such recommendations to be offered. The MRI was dated January 24, the hearing was held on February 12, and the ALJ issued his opinion on February 28. The person evaluating the MRI would not be expected to make a treatment recommendation, and there is no evidence identified in the Record from anyone who could be expected to. If a doctor would continue prescribing Motrin and

---

[1]The report from the agency doctor, Dr. LaVerne Barnes, does not alter this conclusion. In July 2012 Dr. Barnes noted, among other things, that "there is insufficient evidence in file to determine the physical limitations as alleged." R. at 394. Plaintiff argues this demonstrates the entire RFC lacked all support. The Court disagrees; read in context, Dr. Barnes is indicating that the available records did not allow for a determination of Plaintiff's condition at *that* time – which makes sense, given that the records available were from 2010. Dr. Barnes did not comment on Plaintiff's condition as of 2010, nor did Dr. Barnes have the benefit of medical records dated after July 11, 2012 and may not even have had the records from May 2012 through July 2012 – that is, records developed after Plaintiff resumed seeing a doctor. At best, Dr. Barnes' comment is conflicted evidence, but it does not deprive the ALJ's RFC finding of substantial support in the Record.

5

other conservative treatment, that is one thing – but the Record does not reflect this to be the case.

On remand, the ALJ must evaluate whether Plaintiff became disabled at some point in January 2013. This will require establishing the medical significance of the findings on the January 2013 MRI. The ALJ remains free to consider all factors relevant to this issue, including any course of treatment that was prescribed, Plaintiff's adherence to that treatment, and the prognosis for (or actual) improvement.

## B.

Plaintiff's second argument challenges the ALJ's conclusion that Plaintiff has a high school education. Plaintiff concedes that he completed high school, but contends this fact is not dispositive; while the numerical grade level completed serves as proof of educational ability, other evidence may contradict such a conclusion. See 20 C.F.R. § 404.1564(b). Here, Plaintiff contends that while he graduated from high school his extremely low class rank and grade point average contradict the conclusion that he actually has a high school education. This evidence is relevant, but it does not *compel* the conclusion Plaintiff seeks. Here, the ALJ's conclusion that Plaintiff has a high school education was supported by substantial evidence in the Record as a whole: not only did Plaintiff complete high school, but (1) diagnostic testing demonstrated Plaintiff had average intellect and (2) Plaintiff's vocational history included semi-skilled and skilled work. The ALJ is the finder of fact, and he considered the evidence and reached a factual conclusion; the Court cannot re-evaluate the facts to reach a different conclusion.

## C.

Plaintiff's final argument is that the RFC does not adequately account for his mental limitations. In particular, Plaintiff contends the RFC does not account for his deficits in reading, math, concentration, or memory. To the contrary: the ALJ found Plaintiff was moderately limited in the areas of concentration, persistence, and pace,

6

and to account for these limitations – as well as any vocational limitations imposed by Plaintiff's ability to read or perform mathematical computations – the RFC limited Plaintiff "to simple tasks with simple work related decisions that are object oriented." R. at 15. This appropriately accounts for the limitations the ALJ found to exist.

## IV.  CONCLUSION

The Commissioner's final decision is affirmed to the extent Plaintiff was found not disabled before January 2013.  The decision is reversed to the extent Plaintiff was found not disabled after January 2013 and the case is remanded for further proceedings.

IT IS SO ORDERED.

DATE: July 15, 2015

/s/ Ortrie D. Smith  
ORTRIE D. SMITH, SENIOR JUDGE  
UNITED STATES DISTRICT COURT